**In re SHERIDAN ASSOCIATES, Debtor.**

**Herbert S. WANDER, Trustee, Plaintiff,**

v.

**STEINHARDT PARTNERS, f/k/a Steinhardt, Berkowicz & Company, Defendant.**

Bankruptcy No. 79 B 40700.
Adv. No. 81 A 404.

United States Bankruptcy Court,
N. D. Illinois, E. D.

April 26, 1982.

Andrew Eichner of Reuben & Proctor, Chicago, Ill., for defendant.

Francis X. Grossi, Jr. of Katten, Muchin, Zavis, Pearl & Galler, Chicago, Ill., for trustee.

## ORDER

LAWRENCE FISHER, Bankruptcy Judge.

This matter coming on to be heard upon the Motion of Defendant, Steinhardt Partners, for Change of Venue pursuant to section 1475 of title 28 to the United States Code, and the parties appearing by their respective attorneys, and

The Court having examined the Motion, and having received and examined the Memoranda of Law submitted by the parties in support of their respective positions, and having received and examined the Affidavits and Depositions submitted by the parties, and having heard the arguments of counsel, and the Court being fully advised in the premises;

The Court Finds:

1. On November 15, 1979, Sheridan Associates filed a voluntary petition under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois.

2. On February 3, 1981, Herbert S. Wander, Trustee for the estate of Sheridan Associates, filed the above-captioned adversary proceeding. In said proceeding, the Trustee seeks to recover an alleged preferential transfer by Sheridan Associates to Steinhardt Partners in the amount of approximately $16,000,000.00 pursuant to section 547 of the Bankruptcy Code.

3. On June 29, 1981, Steinhardt Partners filed a Motion to Transfer this section 547 proceeding to the Bankruptcy Court for the Southern District of New York pursuant to section 1475 of title 28 to the United States Code.

4. Section 1475 provides as follows:

A bankruptcy court may transfer a case under title 11 or a proceeding arising under or related to such a case to a bankruptcy court for another district, in the interest of justice and for the convenience of the parties.

28 U.S.C. § 1475 (Supp. III 1979).

5. The burden of proof in a Motion to Transfer pursuant to section 1475 is clearly on the Movant. *In re Commonwealth Oil Refining Co.*, 596 F.2d 1239 (5th Cir. 1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980); *In re Cole*, 6 B.C.D. 565, 7 B.R. 154 (Bkrtcy.Ct.D.Utah 1980); *In re Galanis*, 6 B.C.D. 1303, 6 B.R. 900 (Bkrtcy.Ct.D.Conn.1980); 1 *Collier on Bankruptcy*, ¶ 3.02, at 3–201 (15th ed. 1981).

6. Section 1475 was enacted in 1978 with the passage of the Bankruptcy Reform Act. It supercedes Bankruptcy Rules 782 and 116 which contained similar language. Rule 116 provided for transfer of an entire bankruptcy case while Rule 782 provided for transfer of adversary proceedings. The legislative history of section 1475 states as follows:

This section provides a liberal change of venue rule. It permits a court to transfer any case or proceeding to a bankruptcy court for another district, in the interest of justice and for the convenience of the parties. This section is derived from Bankruptcy Rules 116 and 782.

H.R.Rep.No. 95–595, 95th Cong., 1st Sess., 447, *reprinted in* [1978] U.S.Code Cong. & Ad.News 5787, 5963, 6403.

The Bankruptcy Rules were prescribed by the Supreme Court in 1973. They include a provision for nationwide service of process, Bankruptcy Rule 704(f).[1] The Advisory Committee responsible for the drafting of the Bankruptcy Rules states in its Note to Bankruptcy Rule 782 as follows:

In view of the extension of the territorial limits of effective service by Rule 704(f), it behooves courts of bankruptcy to accord a liberal construction to this Rule 782 in order to minimize hardship to parties served in a part of the country re-

---

1. Bankruptcy Rule 704(f) provides as follows:
 (1) The summons, together with the complaint and notice of trial or pre-trial conference, and all other process except a subpoena may be served anywhere within the United States.

"United States," as used in this subdivision, includes the Commonwealth of Puerto Rico and the territories and possessions to which the Act is or may hereafter be.

mote from the district where the court of bankruptcy is sitting.

2 *Collier Pamphlet Edition* 243 (1979).

7. The Movant, Steinhardt Partners, maintains that the legislative history and Advisory Committee Note mandate that transfers pursuant to section 1475 are to be liberally granted and that a more liberal test should govern Motions pursuant to section 1475 than govern Motions under section 1404 of title 28 of the United States Code (the change of venue section for district courts).

8. This Court does not agree with Movant's interpretation of the legislative history and Advisory Committee Note. These official comments do not indicate, as Movant contends, that transfers are to be liberally or easily granted. The legislative history merely states a fact; section 1475 "provides for a liberal change of venue rule." The rule *is* a liberal one. It provides the court with much discretion in determining when transfer is proper. The Advisory Committee Note is advice to bankruptcy courts to accord a liberal construction to the transfer provision since the drafters intended the rule to be a liberal one. Further, the Note is an explanation of one of the reasons bankruptcy courts are given wide discretion with respect to Motions for Change of Venue.

9. In contrast to Steinhardt Partners' statements, the Trustee argues that under section 1475 the Movant must make a clear and convincing showing that the balance of convenience weighs strongly in favor of the transferee court. In addition, he asserts that transfer is only proper when inconvenience would be eliminated, not simply shifted from one party to another. This Court does not agree.

10. In 1947, the Supreme Court decided the case of *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

At that time there was no federal statute providing for change of venue. The issue before the Court involved the principle of *forum non conveniens*: the principle that "a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Id.* at 507, 67 S.Ct. at 842. In *Gulf Oil*, the Supreme Court approved the application of the doctrine of *forum non conveniens* by federal courts.

In 1948, Congress enacted the following change of venue provision:

> § 1404 Change of Venue
>
> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404 (1976).

Under the doctrine of *forum non conveniens*, the district court had the power to dismiss a case, but did not have the power to transfer the case, which section 1404 provided for. In other respects, it was believed by many courts that section 1404 merely codified the *Gulf Oil* decision and did not differ from the doctrine of *forum non conveniens* approved by the Supreme Court in 1947. Contrary to this understanding, the Supreme Court in 1955 distinguished the two cases. The Court stated that section 1404 permits transfers upon a lesser showing of inconvenience than required for dismissal under the doctrine of *forum non conveniens* and the *Gulf Oil* case. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955). In *Gulf Oil*, in referring to the doctrine of *forum non conveniens*, the Court stated that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." 330 U.S. at 508, 67 S.Ct. at 843.[2]

---

**2.** "[B]y [the time *Norwood* was decided] there were so many cases saying a section 1404(a) transfer can be granted only if the balance is strongly in favor of the moving party that they had a momentum of their own, and later cases have cited and quoted them often without recognizing that the original source of this theory was in connection with forum non conveniens and that its application to section 1404(a) is very doubtful." 15 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3848 at 250 (1976). *See, e.g., Butterick Co. v. Will*, 316 F.2d 111, 112 and n. 2 (7th Cir. 1963).

In light of these Supreme Court decisions, a Movant, in order to justify transfer under section 1404, need not show that the balance is strongly in favor of the defendant. The Movant's burden is something less than that. Exactly what the Movant's burden is has not been defined by the Supreme Court.

 Section 1475, the change of venue section applicable to bankruptcy courts, contains a provision almost identical to that in section 1404. Considering the similar wording and purpose of sections 1404 and 1475, and considering the legislative history and Advisory Committee Note pertaining to change of venue in bankruptcy proceedings, it is reasonable to apply the statements made by the Supreme Court in *Norwood v. Kirkpatrick* regarding section 1404 to section 1475. Accordingly, under section 1475, the Movant need not show that the balance is strongly in favor of the defendant in order to justify transfer. The Movant's burden is something less than that. Clearly, in light of Bankruptcy Rule 704 which provides for nationwide service of process in bankruptcy proceedings, the Movant's burden under section 1475 should not be any greater than the burden under section 1404.

Many lower court decisions have been rendered under section 1404 and section 1475 which attempt to describe and clarify what must be shown in order to justify transfer of a case. The standards enunciated vary greatly and are largely inconsistent. *See, e.g., In re Commonwealth Oil Refining Co.*, 596 F.2d 1239 (5th Cir. 1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980) (movant's burden of proof is that of a preponderance of evidence); *Bodine's, Inc. v. Sunny-O, Inc.*, 494 F.Supp. 1279, 1285 (N.D.Ill.1980) (movant must show that the considerations of section 1404(a) weigh heavily in favor of the transferee court); *In re Hartfield-Zodys, Inc.*, 5 Collier Bankruptcy Cases 699, 702 (S.D.N.Y.1975) (transfer is to be freely given so as to offset the hardships to witnesses and parties that could be caused by the new nationwide service of process provision, Bankruptcy Rule 704); *Blanning v. Tisch*, 378 F.Supp. 1058, 1060 (E.D.Pa.1974) (great weight given to plaintiff's choice of forum); *General State Authority v. Aetna Casualty & Surety Co.*, 314 F.Supp. 422, 423 (S.D.N.Y.1970) (movant must make a clear cut and convincing showing that the balance of convenience weighs strongly in favor of transferee court); *A. C. Samford, Inc. v. United States*, 226 F.Supp. 72, 77 (M.D.Ga.1963) (little weight given to plaintiff's choice of forum). It appears that attempts to clarify and offer more specific and refined guidelines than provided in the statute have ironically created more confusion and difficulty in the application of the sections. It seems that section 1404 and section 1475, as written, were intended to vest the courts with wide discretion in determining the propriety of a chosen venue. The legislative history of section 1475 in particular states that the section provides for a "liberal" change of venue rule. There is no reason for the judiciary to impose on itself restrictions in the application of the section. Despite the numerous lower court decisions interpreting section 1404 and section 1475, this Court has not found any Supreme Court or Seventh Circuit decision interpreting section 1475 or its predecessor, Bankruptcy Rules 782 and 116. Accordingly, this Court refrains from expanding on the language of section 1475.

This Court concludes that in order to justify transfer under section 1475, a Movant must show just what the language of the statute requires, that transfer is "in the interest of justice and for the convenience of the parties." What exactly that is depends on the particular facts and circumstances of each case. Indeed, even the weight to be given to a particular factor may depend upon the facts and circumstances of the case. *See Paragon Revolute Corp. v. C. F. Pease Co.*, 120 F.Supp. 488, 490 (D.C.Del.1954). The extent of the Movant's burden is that of a preponderance of the evidence. *In re Commonwealth Oil Refining Co.*, 596 F.2d 1239 (5th Cir. 1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980); *In re Fairfield Puerto Rico, Inc.*, 333 F.Supp. 1187, 1189 (D.Del. 1971). Any lesser burden does not amount to a showing. Any greater burden is not

justified by the wording of the statute, particularly in light of Bankruptcy Rule 704 which provides for nationwide service of process in bankruptcy cases.

This Court Concludes and Further Finds:

1. This District is the Plaintiff's chosen forum for the instant adversary proceeding. The bankruptcy case, within which the adversary proceeding arises, is pending in this District. In addition, individual involuntary bankruptcy proceedings are pending in this District against each of the partners of Sheridan Associates: James Harris, Steven Klemen, Jeffrey Silverman and Michael Towson. Further, claims have been filed by the Trustee of Sheridan Associates in each of the partners' bankruptcies for any deficiency in the estate of Sheridan Associates. There is also pending in this District an action for voidable preferences against Stephen Klemen and certain of his entities. Also pending before this Court are adversary proceedings filed by creditors against the partners of Sheridan Associates for determination of the non-dischargeability of certain debts based on allegations of fraud.

2. The Trustee's Complaint alleges that on or about September 21, 1979, Steinhardt Partners loaned funds to Sheridan Associates, consisting of a transfer of $16,000,-000.00 of U.S. Treasury Bonds bearing interest of 9.125% per annum and due to mature on May 15, 2009, and that Sheridan Associates agreed to pay Steinhardt Partners interest at the rate of .75% per annum on the principal. The Complaint further alleges that Steinhardt Partners repaid the indebtedness on or about October 3 and 4, 1979, within 90 days of the filing of the Sheridan Associates bankruptcy. The Trustee contends that all of the elements of a preference as defined in section 547(b) of the Bankruptcy Code exist.

Section 547(b) provides as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition;

. . . .

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (Supp. III 1979).

3. Steinhardt Partners, in its Answer, denies the Trustee's allegations and asserts separate defenses. It argues that it is not a creditor within the meaning of section 547 the payments were not made on account of antecedent debt within the meaning of section 547; the transfer was not made while the debtor was insolvent; and the ordinary course of business exception provided in section 547(c)(2) applies.

Section 547(c)(2) provides as follows:

(c) The trustee may not avoid under this section a transfer—

. . . . .

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms;

11 U.S.C. § 547(c)(2) (Supp. III 1979).

Steinhardt Partners describes the transaction in question not as a loan, but as a "bonds borrowed against collateral" transaction. It alleges that the bonds were de-

posited in Steinhardt Partners' account at Sheridan Associates. The bonds were subject to being borrowed by Sheridan Associates from Steinhardt Partners' account provided that Sheridan post collateral to Steinhardt Partners' account, pay .75% per annum interest, and return the bonds upon demand.

Steinhardt Partners maintains that they are fully secured if Sheridan Associates borrowed the bonds and posted collateral. If Sheridan Associates borrowed the bonds but did not post collateral, then Steinhardt Partners contends that the bonds were converted and that the transaction occurred as a result of fraud. Steinhardt Partners also states that at all relevant points in time, Sheridan Associates had materially misrepresented its net worth and financial condition. In view of the foregoing, Steinhardt Partners contends that the bonds never became property of Sheridan Associates and at all times were subject to Steinhardt Partners' right to reclaim such bonds and to a constructive trust or equitable lien created for the benefit of Steinhardt Partners.

4. The Trustee contends that the solvency of Sheridan Associates will be the single most complex and evidentiary issue in the case, and that the essential fact pattern regarding the transfer of bonds will be largely undisputed.

█ Under the Bankruptcy Code the solvency of a partnership's partners is relevant for purposes of determining the solvency of the partnership. Section 101(26)(B) of the Bankruptcy Code defines insolvency with reference to a partnership:

... financial condition such that the sum of such partnership's debts is greater than the aggregate of, at a fair valuation—

(i) all of such partnership's property, exclusive of property of the kind specified in subparagraph (A)(i) of this paragraph; and

(ii) the sum of the excess of the value of each general partner's separate property, exclusive of property of the kind spec-

ified in subparagraph (A)(ii) of this paragraph, over such partner's separate debts. 11 U.S.C. § 101(26)(B) (Supp. III 1979).

It appears that all or substantially all of the records regarding the past financial condition of the general partners of Sheridan Associates, except perhaps for James Harris, are located in Chicago. All of the records regarding the past financial condition of Sheridan Associates are located in Chicago.

5. Steinhardt Partners contends that the nature and terms of the transaction involved in the instant adversary proceeding will be the most litigated issue in the case. In that regard it states that documents relevant to the transactions at issue are located in New York. Further, it argues that the issue of insolvency will only be reached if the Trustee first succeeds in establishing his version of the nature and terms of the transaction.

Steinhardt Partners is not correct in its assertion that the issue of insolvency will only be reached if the Trustee first succeeds in establishing his version of the nature and terms of the transaction. The trial will not be a bifurcated one. However, section 547(f) provides that "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." Accordingly, it is Steinhardt Partners' burden to rebut the presumption. Only if the presumption is rebutted will the Trustee be required to prove insolvency.

6. It is difficult for the Court prior to trial to anticipate which issues will actually be litigated, and which will require the most witnesses and time. The largest number of the potential witnesses, however, are located in the New York area and are subject to being served with a subpoena by the Bankruptcy Court for the Southern District of New York. The only witnesses within the subpoena power of this Court are Stephen Klemen, Michael Towson, Jeffrey Silverman, Bud Hunt, the Trustee for the estate of Stephen Klemen, and the auditors from Arthur Anderson & Co.'s Chicago office.

Stephen Klemen, Michael Towson and Jeffrey Silverman, partners of Sheridan Associates, each have a bankruptcy proceeding pending against them in this District. Section 521(2) of the Bankruptcy Code requires each of them to cooperate with the trustee of their individual estates. As partners of Sheridan Associates, they have a potential liability for any deficiency in the estate of Sheridan Associates. Accordingly, it would be in the interest of each of the partners' estates that Sheridan Associates succeed in its claim against Steinhardt Partners. It would be appropriate, therefore, for the trustees for these individual estates to request the presence of the individual debtors at a trial of this preference claim should it proceed in New York. Stephen Klemen, Michael Towson and Jeffrey Silverman would then be bound to cooperate, pursuant to section 521 of the Bankruptcy Code. As to the testimony of Bud Hunt and Arthur Anderson & Co., there is no allegation that they would be unwilling to attend trial in New York. The expense for their attendance, however, would be greater than if trial proceeded in Chicago. Again, it should be noted that the Trustee will not be required to present any evidence on insolvency unless Steinhardt Partners first introduces evidence sufficient to rebut the presumption of insolvency.

7. How much state law, if any, will be involved in the resolution of the preference action against Steinhardt Partners is questionable. To the extent state law is applicable however, it will be New York state law that will be applied.

8. This District would be a more convenient and less expensive forum for the Trustee and his counsel, than the Southern District of New York would be. Generally, the economical administration of the estate of Sheridan Associates would be served by proceeding in this District.

9. Steinhardt Partners is a New York limited partnership having its sole place of business in New York City. It has no office in Illinois and has never transacted business in Illinois. The transactions which are the subject of the instant adversary proceeding occurred in New York City. There are no "minimum contacts" between Steinhardt Partners and the state of Illinois. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). If it were not for Bankruptcy Rule 782 which provides for nationwide service of process, section 1471 of title 28 to the United States Code [3] which in 1978 extended the bankruptcy court's subject matter jurisdiction, and section 1473(a) of title 28 to the United States Code [4] which is the bankruptcy venue provision, Steinhardt Partners would not be subject to suit in this District.

The foregoing facts are relevant considerations in a Motion to Change Venue pursuant to section 1475. Section 1475 directs the court to consider the "interest of justice" as well as the "convenience of the parties." The Trustee maintains, however, that the foregoing facts are not indicative of "the interest of justice." He argues that a federal court's exercise of personal jurisdiction over an individual is constitutional under the Fifth Amendment if the individual has "minimum contacts" with the United States; due process does not require that the individual have "minimum contacts" with the state in which the federal court sits. The Trustee cites the following cases in support of his contention: *Mariash v. Morrill*, 496 F.2d 1138 (2nd Cir. 1974); *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326 (2nd Cir. 1972); *Edward J. Moriarty & Co. v. General Tire & Rubber Co.*, 289 F.Supp. 381, 390 (S.D.Ohio 1967).

---

**3.** Section 1471 provides in pertinent part as follows:

> (b) ... the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.
>
> (c) The bankruptcy court for the district in which a case under title 11 is commenced

shall exercise all of the jurisdiction conferred by this section on the district courts.

**4.** Section 1473(a) provides in pertinent part as follows:

> (a) ... A proceeding arising in or related to a case under title 11 may be commenced in the bankruptcy court in which such case is pending.

The Trustee may be correct in his statement of the basis for the exercise of personal jurisdiction by federal courts. Due process considerations may only require that an individual have "minimum contacts" with the United States in order to justify exercising personal jurisdiction over them in cases involving federal matters. However, due process requirements are only minimum requirements of justice and fairness. The letter of applicable statutes and due process considerations are not the only factors relevant in determining whether retention or transfer of a case is in the "interest of justice." Certainly, the general federal jurisdiction and venue requirements, although not applicable in the bankruptcy context, are indicative of what factors are relevant in determining the justness and fairness of a forum in comparison to another. Rule 4 of the Federal Rules of Civil Procedure provides that unless a statute of the United States authorizes otherwise, service of process by a federal court may be served only within the territorial limits of the state in which the courts sits or under the circumstances and the manner prescribed by the statute of the state in which the court sits. The general federal venue statute provides that in cases where jurisdiction is not founded solely on diversity of citizenship, proper venue is limited to the judicial district where all defendants reside, or in which the claim arose. 28 U.S.C. § 1391(b).

10. Without regard to defendant's lack of "minimum contacts" with this District and the other related factors discussed in paragraph 9 above, the factors favoring transfer would be of substantially equal weight to the factors favoring retention of the case in this forum. The absence of "minimum contacts" and the related factors are of sufficient weight to tip the scale in favor of Movant and necessitate transfer of the adversary proceeding from the Plaintiff's chosen forum to the Southern District of New York.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Steinhardt Partners has established by a preponderance of the evidence that transfer is "in the interest of justice and for the convenience of the parties."

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Motion of Steinhardt Partners for Change of Venue pursuant to section 1475 of title 28 to the United States Code be, and the same is hereby granted.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the above-entitled adversary proceeding be, and the same is hereby transferred from the Eastern Division of the Northern District of Illinois to the Southern District of New York.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Clerk of the United States Bankruptcy Court herewith cause this proceeding to be closed and transferred to the Clerk of the United States Bankruptcy Court for the Southern District of New York to be there docketed.